Gustavo Ponce, Esq.
Nevada Bar No. 15084
Mona Amini, Esq.
Nevada Bar No. 15381
**KAZEROUNI LAW GROUP, APC**
6940 S. Cimarron Rd., Suite 210
Las Vegas, Nevada 89113
Telephone: (800) 400-6808
Facsimile: (800) 520-5523
E-mail: gustavo@kazlg.com
E-mail: mona@kazlg.com

*Attorney for Plaintiff*
*Jon Pokorski*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JON POKORSKI, | Case No.: |
| Plaintiff, | |
| vs. | **COMPLAINT FOR DAMAGES FOR VIOLATIONS OF** |
| ALLY FINANCIAL, INC,; EXPERIAN INFORMATION SOLUTIONS, INC.; TRANS UNION, LLC; EQUIFAX INFORMATION SERVICES, LLC, | **(1) THE FAIR CREDIT REPORTING ACT, 15 U.S.C. §§ 1681, *et seq.* ("FCRA")** |
| Defendants. | **DEMAND FOR JURY TRIAL** |

///

///

///

///

**INTRODUCTION**

1. The United States Congress has found the banking system is dependent up-on fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq. ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

2. Plaintiff Jon Pokorski ("Plaintiff"), through Plaintiff's attorneys, brings this action to challenge the actions of Ally Financial, Inc. ("Ally"), Equifax Information Services, LLC. ("Equifax"); Trans Union, LLC, ("Trans Union") and Experian Information Solutions, Inc. ("Experian") (collectively as "Defendants"), with regard to Defendants Ally, Experian, Trans Union, and Equifax's erroneous and inaccurate reporting of Plaintiff's credit information and Defendants Ally, Experian, Trans Union, and Equifax's failure to properly investigate Plaintiff's disputes; this conduct caused Plaintiff damages.

3. Defendants Ally, Experian, Trans Union, and Equifax, failed to properly investigate Plaintiff's disputes, update, and correct Plaintiff's credit information, damaging Plaintiff's creditworthiness and causing Plaintiff further injury.

4.   Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, which Plaintiff alleges on personal knowledge.

5.   While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

6.   Unless otherwise stated, all the conduct engaged in by Defendants took place in Nevada.

7.   Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such specific violation.

8.   Unless otherwise indicated, the use of Defendants' name in this Complaint includes all agents, employees, officers, members, directors, heirs, predecessors, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendants named.

**JURISDICTION AND VENUE**

6.   Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331, and 15 U.S.C. §§ 1681, et seq.

7.   This action arises out of Defendant Ally's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq. (FCRA).

8.   Defendants are subject to personal jurisdiction in Nevada because they conduct business in Nevada.

9.   Venue is proper pursuant to 28 U.S.C. § 1391 because all of the events giving rise to this lawsuit occurred in Nevada and within this judicial district, Plaintiff reside within this judicial district, the conduct complained of herein occurred within this judicial district, and Defendants conducted business within this judicial district at all times relevant.

**PARTIES**

10.  Plaintiff is a natural person who reside in Clark County, Nevada.

11.    Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

12.    Defendant Ally is a Delaware corporation that operates as a financial services company doing business in the State of Nevada with a principal place of business located at 500 Woodward Ave Detroit, MI 48226.

13.    Defendant Ally is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

14.    Defendant Experian is a national credit reporting agency, doing business in Nevada, with a principal place of business in California.

15.    Defendant Equifax is a national credit reporting agency, doing business in Nevada, with a principal place of business in Georgia.

16.    Defendant Trans Union is a corporation doing business in Nevada, with a principal place of business in Illinois.

17.    Defendants Experian, Equifax and Trans Union (together, the "CRA Defendants") each regularly assemble and/or evaluate consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports and are each a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f).

18.    Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendants.

### FACTUAL ALLEGATIONS

19.    Sometime before April of 2023, Plaintiff allegedly incurred financial obligations to an original creditor (Ally) primarily for personal, family or household purposes (the "Debt").

14.    Plaintiff had an auto loan with Ally in 2021 for a 2018 Kia Optima (VIN 5XXGU4L36JG181721) (the "Vehicle").

15. Plaintiff made timely payments to Ally regarding the Vehicle.

16. In March of 2023, Plaintiff was in a car accident which resulted in the total loss of the Vehicle.

17. On March 17, 2023, Plaintiff's insurance company, Nationwide, sent Ally a check for the full amount owed on the Vehicle.

18. As of March 18, 2023, Plaintiff did not owe any money to Ally.

19. On April 3, 2023, Ally cashed the check sent by Nationwide.

20. On April 4, 2023, Ally sent Plaintiff a letter congratulating Plaintiff on paying off the Vehicle in full. The letter also stated that Plaintiff was entitled to a refund of the GAP insurance.

21. On April 5, 2023, Plaintiff received an email from Ally congratulating Plaintiff again on paying off the Vehicle in full. The email also stated that Ally was releasing the title of the Vehicle.

22. On April 24, 2023, Ally refunded Plaintiff $2,423.97 because Nationwide had overpaid for the Vehicle.

23. On May 9, 2023, Ally sent Plaintiff a check for $616.60 for the unused GAP insurance.

24. On October 15, 2023, Plaintiff visited a car dealership to purchase a new vehicle but was denied a car loan due to his credit score.

25. When Plaintiff checked his credit reports, he noticed that Ally did not close the account and had been reporting late payments on the Vehicle.

26. On October 23, 2023, Plaintiff contacted Ally and confirmed that the Vehicle had been paid in full, and the account had been closed on April 23, 2023.

**<u>Equifax and Ally Inaccurately Reported Credit Information</u>**

**<u>Re: the Account No. xxxxxxxxxxxx5016</u>**

30. In an Equifax credit report dated August 2, 2024, Equifax and Ally reported the following inaccurate and derogatory information regarding the Ally account ending in 5016:

- Balance Amount: $1,827
- Amount Past Due: $1,238
- Past Due Payments: July 2023 – June 2024

31. Equifax and Ally should not have reported derogatory information on the Account on August 2, 2024, because the account had been paid in full and should have been closed on April 3, 2023.

32. On or about December 26, 2024, Plaintiff disputed Equifax and Ally's reporting regarding the Account pursuant to 15 U.S.C. § 1681i by notifying Equifax, in writing, of the incorrect and inaccurate credit information furnished by Ally.

33. Specifically, Plaintiff sent a letter, certified, return receipt, to Equifax, requesting the above inaccurate and incorrect derogatory information be updated, modified or corrected.

34. Equifax received Plaintiff's dispute on December 29, 2024.

35. To date, Plaintiff has not received a response from Equifax regarding the dispute.

36. On information and belief, upon receiving the dispute letters, Equifax timely notified Ally of Plaintiff's dispute as required by 15 U.S.C. § 1681i(a)(2).

37. Ally was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. 1681s-2(b).

38. Equifax was required to conduct a reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

39. A reasonable investigation by Equifax and Ally would have indicated that the account had been paid in full and should have been closed. A reasonable investigation by Equifax and Ally would have indicated that Plaintiff did not owe any amount, let alone the current balance of $1,827, that there was no amount past due, and that the account should have been reported as closed in April of 2023.

40. Equifax and Ally failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B) and 15 U.S.C. § 1681i.

41. Equifax and Ally, verified and continued to report the inaccurate derogatory information on Plaintiff's report and additional derogatory information.

42. Specifically, in an Equifax credit report dated February 13, 2025, Equifax once again reported the following inaccurate and derogatory information regarding the Account:

- Balance Amount: $1,827
- Amount Past Due: $1,238
- Past Due Payments: January 2025

43. Equifax should not have reported derogatory and incorrect information on the Account after December 2024 because Plaintiff informed Ally and Equifax that the Account was reporting incorrect information, specifically the balances and amount allegedly owed.

44. After receiving notice of Plaintiff's dispute, Equifax and Ally republished the inaccurate and derogatory information on the Ally account.

45. Equifax and Ally further failed to contact Plaintiff and request additional information from Plaintiff that would aid in reporting the correct status of the account.

46. Therefore, Equifax and Ally upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A).

47. Plaintiff is informed and believes and here upon alleges that during the investigation of Plaintiff's dispute, prior to Ally responding and verifying the incorrect information to the credit reporting agencies, Ally failed to communicate with Equifax to aid in reporting the correct status of the account.

48. Plaintiff is informed and believes and here upon alleges that during the investigation of Plaintiff's dispute, prior to Defendant Equifax responding and verifying the incorrect information to Plaintiff, Defendant Equifax failed to communicate with Ally to aid in reporting the correct status of the account.

49. Equifax and Ally, upon receipt of Plaintiff's dispute, failed to conduct an investigation or reinvestigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) and 15 U.S.C. § 1681i.

50. Equifax and Ally failed to review all relevant information provided by Plaintiff in the disputes to Equifax, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B) and 15 U.S.C. § 1681i.

51. Due to Equifax and Ally's failure to investigate, they each further failed to correct and update Plaintiff's information on the account as required by 15 U.S.C. § 1681s-2(b)(1)(E), and 15 U.S.C. § 1681i, thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and 15 U.S.C. § 1681i.

52. Plaintiff's continued efforts to correct Equifax and Ally's erroneous and negative information by disputing the reporting on the Account with Equifax and Ally were futile.

53. Equifax and Ally's continued inaccurate and negative reporting on the Account in light of its knowledge of the actual errors was willful.

54. Equifax and Ally's inaccurate and negative reporting damaged Plaintiff's creditworthiness.

55. As a result of Equifax and Ally's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation, invasion of privacy, out-of-pocket expenses in challenging Equifax and Ally's inaccurate reporting, damage to her creditworthiness, emotional distress and mental anguish as well as physical manifestations and injuries and harm.

56. By inaccurately reporting account information after notice and confirmation of their errors, Equifax and Ally failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E) and 15 U.S.C. § 1681i.

**Trans Union and Ally Inaccurately Reported Credit Information**

**Re: the Account No. 22804604****

57. In a Trans Union credit report dated August 2, 2024, Trans Union and Ally reported the following inaccurate and derogatory information regarding the Ally account:

- Balance Amount: $1,827
- Amount Past Due: $1,238
- Past Due Payments: May 2023 – July 2024

58. Trans Union and Ally should not have reported derogatory information on the Account on August 2, 2024, because the account had been paid in full and should have been closed on April 3, 2023.

59. On or about December 26, 2024, Plaintiff disputed Trans Union and Ally's reporting regarding the Account pursuant to 15 U.S.C. § 1681i by notifying Trans Union, in writing, of the incorrect and inaccurate credit information furnished by Ally.

60. Specifically, Plaintiff sent a letter, certified, return receipt, to Trans Union, requesting the above inaccurate and incorrect derogatory information be updated, modified or corrected.

61. Trans Union received Plaintiff's dispute on December 30, 2024.

62. To date, Plaintiff has not received a response from Trans Union regarding the dispute.

63. On information and belief, upon receiving the dispute letters, Trans Union timely notified Ally of Plaintiff's dispute as required by 15 U.S.C. § 1681i(a)(2).

64. Ally was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. 1681s-2(b).

65. Trans Union was required to conduct a reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

66. A reasonable investigation by Trans Union and Ally would have indicated that the account had been paid in full and should have been closed. A reasonable investigation by Trans Union and Ally would have indicated that Plaintiff did not owe any amount, let alone the current balance of $1,827, that there was no amount past due, and that the account should have been reported as closed in April of 2023.

67. Trans Union and Ally failed to review all relevant information provided by Plaintiff in the dispute to Trans Union, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B) and 15 U.S.C. § 1681i.

68. Trans Union and Ally, verified and continued to report the inaccurate derogatory information on Plaintiff's report and additional derogatory information.

69. Specifically, in a Trans Union credit report dated February 13, 2025, Trans Union once again reported the following inaccurate and derogatory information regarding the Account:

- Balance Amount: $1,827
- Amount Past Due: $1,238
- Past Due Payments: May 2023 – December 2024

70. Trans Union should not have reported derogatory and incorrect information on the Account after December 2024 because Plaintiff informed Ally and Trans Union that the Account was reporting incorrect information, specifically the balances and amount allegedly owed.

71. After receiving notice of Plaintiff's dispute, Trans Union and Ally republished the inaccurate and derogatory information on the Ally account.

72. Trans Union and Ally further failed to contact Plaintiff and request additional information from Plaintiff that would aid in reporting the correct status of the account.

73. Therefore, Trans Union and Ally upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A).

74. Plaintiff is informed and believes and here upon alleges that during the investigation of Plaintiff's dispute, prior to Ally responding and verifying the incorrect information to the credit reporting agencies, Ally failed to communicate with Equifax to aid in reporting the correct status of the account.

75. Plaintiff is informed and believes and here upon alleges that during the investigation of Plaintiff's dispute, prior to Defendant Trans Union responding and verifying the incorrect information to Plaintiff, Defendant Trans Union failed to communicate with Ally to aid in reporting the correct status of the account.

76. Trans Union and Ally, upon receipt of Plaintiff's dispute, failed to conduct an investigation or reinvestigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) and 15 U.S.C. § 1681i.

77. Trans Union and Ally failed to review all relevant information provided by Plaintiff in the disputes to Trans Union, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B) and 15 U.S.C. § 1681i.

78. Due to Trans Union and Ally's failure to investigate, they each further failed to correct and update Plaintiff's information on the account as required by 15 U.S.C. § 1681s-2(b)(1)(E), and 15 U.S.C. § 1681i, thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and 15 U.S.C. § 1681i.

79. Plaintiff's continued efforts to correct Trans Union and Ally's erroneous and negative information by disputing the reporting on the Account with Trans Union and Ally were futile.

80. Trans Union and Ally's continued inaccurate and negative reporting on the Account in light of its knowledge of the actual errors was willful.

81. Trans Union and Ally's inaccurate and negative reporting damaged Plaintiff's creditworthiness.

82. As a result of Trans Union and Ally's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation, invasion of privacy, out-of-pocket expenses in challenging Trans Union and Ally's inaccurate reporting, damage to her creditworthiness, emotional distress and mental anguish as well as physical manifestations and injuries and harm.

83. By inaccurately reporting account information after notice and confirmation of their errors, Trans Union and Ally failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E) and 15 U.S.C. § 1681i.

### **Experian and Ally Inaccurately Reported Credit Information**
### **Re: Account No. 22804604….**

84. In an Experian credit report dated August 2, 2024, Experian and Ally reported the following inaccurate and derogatory information regarding the Ally account:

- Balance Amount: $1,827
- Amount Past Due: $1,238
- Past Due Payments: May 2023 – July 2024

85. Experian and Ally should not have reported derogatory information on the Account on August 2, 2024, because the account had been paid in full and should have been closed on April 3, 2023.

86. On or about December 26, 2024, Plaintiff disputed Experian and Ally's reporting regarding the Account pursuant to 15 U.S.C. § 1681i by notifying

Experian, in writing, of the incorrect and inaccurate credit information furnished by Ally.

87. Specifically, Plaintiff sent a letter, certified, return receipt, to Experian, requesting the above inaccurate and incorrect derogatory information be updated, modified or corrected.

88. Experian received Plaintiff's dispute on December 30, 2024.

89. To date, Plaintiff has not received a response from Experian regarding the dispute.

90. On information and belief, upon receiving the dispute letters, Experian timely notified Ally of Plaintiff's dispute as required by 15 U.S.C. § 1681i(a)(2).

91. Ally was required to conduct an investigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. 1681s-2(b).

92. Experian was required to conduct a reinvestigation into this specific account on Plaintiff's consumer report pursuant to 15 U.S.C. §1681i.

93. A reasonable investigation by Experian and Ally would have indicated that the account had been paid in full and should have been closed. A reasonable investigation by Experian and Ally would have indicated that Plaintiff did not owe any amount, let alone the current balance of $1,827, that there was no amount past due, and that the account should have been reported as closed in April of 2023.

94. Experian and Ally failed to review all relevant information provided by Plaintiff in the dispute to Equifax, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B) and 15 U.S.C. § 1681i.

95. Experian and Ally, verified and continued to report the inaccurate derogatory information on Plaintiff's report and additional derogatory information.

96. Specifically, in an Experian credit report dated February 13, 2025, Experian once again reported the following inaccurate and derogatory information regarding the Account:

- Balance Amount: $1,827
- Amount Past Due: $1,238
- Past Due Payments: June 2023 – February 2025

97. Experian should not have reported derogatory and incorrect information on the Account after December 2024 because Plaintiff informed Ally and Experian that the Account was reporting incorrect information, specifically the balances and amount allegedly owed.

98. After receiving notice of Plaintiff's dispute, Experian and Ally republished the inaccurate and derogatory information on the Ally account.

99. Experian and Ally further failed to contact Plaintiff and request additional information from Plaintiff that would aid in reporting the correct status of the account.

100. Therefore, Experian and Ally upon receipt of Plaintiff's dispute, failed to conduct an investigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A).

101. Plaintiff is informed and believes and here upon alleges that during the investigation of Plaintiff's dispute, prior to Ally responding and verifying the incorrect information to the credit reporting agencies, Ally failed to communicate with Experian to aid in reporting the correct status of the account.

102. Plaintiff is informed and believes and here upon alleges that during the investigation of Plaintiff's dispute, prior to Defendant Experian responding and verifying the incorrect information to Plaintiff, Defendant Experian failed to communicate with Ally to aid in reporting the correct status of the account.

103. Experian and Ally, upon receipt of Plaintiff's dispute, failed to conduct an investigation or reinvestigation with respect to the disputed information as required by 15 U.SC. § 1681s-2(b)(1)(A) and 15 U.S.C. § 1681i.

COMPLAINT

104. Experian and Ally failed to review all relevant information provided by Plaintiff in the disputes to Experian, as required by and in violation of 15 U.S.C. § 1681s-2(b)(1)(B) and 15 U.S.C. § 1681i.

105. Due to Experian and Ally's failure to investigate, they each further failed to correct and update Plaintiff's information on the account as required by 15 U.S.C. § 1681s-2(b)(1)(E), and 15 U.S.C. § 1681i, thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681-s(2)(b)(1)(C) and 15 U.S.C. § 1681i.

106. Plaintiff's continued efforts to correct Experian and Ally's erroneous and negative information by disputing the reporting on the Account with Experian and Ally were futile.

107. Experian and Ally's continued inaccurate and negative reporting on the Account in light of its knowledge of the actual errors was willful.

108. Experian and Ally's inaccurate and negative reporting damaged Plaintiff's creditworthiness.

109. As a result of Experian and Ally's continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including without limitation, invasion of privacy, out-of-pocket expenses in challenging Experian and Ally's inaccurate reporting, damage to her creditworthiness, emotional distress and mental anguish as well as physical manifestations and injuries and harm.

110. By inaccurately reporting account information after notice and confirmation of their errors, Experian and Ally failed to take the appropriate measures as required under 15 U.S.C. §§ 1681-s(2)(b)(1)(D) and (E) and 15 U.S.C. § 1681i.

### *Inaccurate Credit Reporting and Reporting Standards*

111. Defendants' inaccurate reporting did not comply with the Consumer Data Industry Association's Metro 2 reporting standards ("Metro 2"), which provides guidance for credit reporting and FCRA compliance.

112. The Consumer Data Industry Association ("CDIA") publishes Metro 2 to assist furnishers with their compliance requirements under the FCRA.

113. On information and belief, Defendants adopted and at all times relevant implemented Metro 2.

114. On information and belief, Defendants adopted Metro 2 and at all times relevant implemented Metro 2 as an integral aspect of their duties under the FCRA to have in place adequate and reasonable policies and procedures to handle investigations of disputed information.

115. Despite Metro 2's instructions, Defendants failed to conform to Metro 2 when reporting inaccurate information regarding Plaintiff's Account.

116. To this end, the adverse reporting on Plaintiff's reports departed from the credit industry's own reporting standards and was not only inaccurate, but also materially misleading under the CDIA's standards as well.

117. A "Consumer Report", as defined by 15 U.S.C. § 1681a(d)(1), impacts a consumer's eligibility for: credit or insurance to be used primarily for personal, family, or household purposes; employment purposes; or any other purpose authorized under section 1681b.

118. As a result, the information held within a consumer report impacts not only a consumer's credit worthiness, rating, and capacity, but also the character, general reputation, and personal characteristics of the consumer.

119. A Federal Trade Commission study mandated by Congress on credit report accuracy ("FTC Study") found that one in five consumers had an error on at least one of their three major credit reports (Equifax, Experian, and Trans Union), with some consumers experiencing inaccuracies that can depress credit scores by over 100 points. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

120. The FTC Study found that the types of errors on consumer reports could lead to consumers paying more for products such as auto loans and insurance. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports

121. The Fair Isaac Corporation credit risk scoring system, also known as "FICO", is a ubiquitous credit scoring system and utilizes data reported by credit reporting agencies. *See* https://www.myfico.com/credit-education/credit-scores/ .

122. Defendants' departures from the credit industry's own reporting standards and reporting inaccurate and derogatory information has caused Plaintiff to suffer damages from reduced FICO credit scores.

### *Credit Scoring*

123. The Fair Isaac Corporation uses the data in consumer reports to calculate credit scores that it assigns to consumers.

124. The term "credit score" is a numerical value or a categorization used to predict the likelihood of certain credit behaviors, including default. *See* http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.

125. FICO scores are calculated from credit data in a consumer's credit report that are arranged in five main categories. Those categories are identified and weighted as follows: payment history accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and mix of accounts/types of credit accounts for 10% of a consumer's FICO score. *See* https://www.myfico.com/credit-education/whats-in-your-credit-score/.

126. Payment history is typically weighted as the most important aspect of a consumer's overall credit score because it shows how the consumer has managed their finances, including: any late payments, how long the consumer has been

managing their accounts, when their last payments were made, and any recent charges. *See, e.g.,* https://www.TransUnion.com/credit-score.

127. A consumer's credit score impacts that consumer's cost of credit (e.g., interest rates, fees, etc.), availability of credit, ratings for insurance products, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extend financing periods, lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines.

128. Inaccurate or incorrect credit reporting often results in a lower FICO (and other credit scoring model) scores, thus creating higher costs of credit for the consumer, diminished opportunities, and less purchasing power.

129. Here, inaccurately reporting the Account as open, with a balance owed, past due and/or delinquent when it was in fact paid in full and should have been closed in April 2023, adversely affects Plaintiff's FICO score.

130. There is no established rule or threshold for classifying the significance of a credit score change as minor or major because the impact of a change in score is dependent on the current score; i.e., a one-point change in credit score that moves the consumer from one risk tier to the next may have a large impact on the consumer's ability to receive credit, the type of credit, or rates of that credit that a consumer may receive.

131. Consistent with the FTC Study, the Fair Isaac Corporation states that inaccurate or incorrect information on a consumer's credit report can hurt their score. *See* https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report/

### Defendants' Failures and Plaintiff's Damages

132. It is inaccurate to report an account as open and delinquent when in fact the account was paid in full and should have been closed.

133. Reporting that an account is still owed and delinquent detrimental to a consumer's credit reputation.

134.  As evidenced by Defendants' failures to correct the reporting of the Account despite receiving accurate information from Plaintiff showing the Account was reporting incorrect balances, Defendants each failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

135.  As evidenced by the inaccurate re-reporting, Defendants each failed to conduct an investigation or reinvestigation upon receipt of Plaintiff's dispute with respect to the disputed information related to the Account as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

136.  Defendants each failed to review all relevant information and documents provided by Plaintiff with his disputes to Defendants, as required by and in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

137.  Due to Defendants' failure to reasonably investigate, Defendants each further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b), thereby causing continued reporting of inaccurate information in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

138.  Defendants' continued inaccurate and derogatory reporting of the Account in light of their knowledge of the errors was knowing willful. Plaintiff is, accordingly, eligible for statutory damages.

139.  Also as a result of Defendants' continued inaccurate and negative reporting, Plaintiff has suffered actual damages, including, without limitation, invasion of privacy, fear of credit denials, out-of-pocket expenses in challenging Defendants' inaccurate reporting, damage to Plaintiff's creditworthiness, damage to Plaintiff's credit reputation, and Plaintiff has suffered loss of personal time and worry, fear, stress, anxiety, and sleeplessness.

140. Creating the false impression of the Account open and having a delinquency creates a material risk that Plaintiff would be denied credit, receive less favorable credit treatment than Plaintiff otherwise would, or receive other unfavorable treatment than Plaintiff otherwise would, from any viewer of Plaintiff's credit reports engaged in judgment-based lending.

141. The adverse effect on Plaintiff's credit score places Plaintiff at the material risk of being denied credit or receiving less favorable credit terms than she otherwise would.

142. The inaccurate information negatively reflects upon Plaintiff, Plaintiff's credit repayment history, Plaintiff's financial responsibility as a debtor, and Plaintiff's credit worthiness.

143. By inaccurately reporting account information after notice from Plaintiff, Defendants each failed to take the appropriate measures in violation of the FCRA and as required under 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

**CAUSE OF ACTIONS**

**COUNT ONE**

**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**

**15 U.S.C. §§ 1681 *ET SEQ*. (FCRA)**

**(*AGAINST ALL DEFENDANTS*)**

144. Plaintiff repeats, re-alleges, and incorporates by reference, all other paragraphs of the Complaint as though fully stated herein.

145. The foregoing acts and omissions of each Defendant constitute numerous and multiple willful, reckless or negligent violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C § 1681.

146. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the

Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from each of the Defendants.

147. As a result of each and every negligent noncompliance of the FCRA, Plaintiff is entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from each of the Defendants.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that judgment be entered against Defendant, and Plaintiff be awarded damages from Defendant, as follows:

**FIRST CAUSE OF ACTION**

**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**

**15 U.S.C. §§ 1681 *ET SEQ*. (FCRA)**

**(*AGAINST ALL DEFENDANTS*)**

- An award of actual damages against each of the Defendants pursuant to 15 U.S.C. § 1681n(a)(1);

- An award of statutory damages against each of the Defendants pursuant to 15 U.S.C. § 1681n(a)(1);

- An award of punitive damages against each of the Defendants as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- An award of costs of litigation and reasonable attorney's fees against each of the Defendants, pursuant to 15 U.S.C. § 1681n(a)(3), and 15 U.S.C. § 1681(o)(a)(1) for each incident of negligent noncompliance of the FCRA; and

- Any other relief the Court may deem just and proper.

///
///
///

1

**JURY DEMAND**

2   148.  Pursuant to the Seventh Amendment to the Constitution of the United States of

3          America, Plaintiff is entitled to, and demand, a trial by jury on all issues so

4          triable.

5   DATED this 14th day of March 2025.

6                                             Respectfully submitted,

7                                             **KAZEROUNI LAW GROUP, APC**

8                                             By:    */s/ Gustavo Ponce*
                                              GUSTAVO PONCE, ESQ.
9                                             MONA AMINI, ESQ.
                                              6940 S. CIMARRON RD., SUITE 210
10                                            LAS VEGAS, NEVADA 89113
                                              *Attorneys for Plaintiff*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT